UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANNY PARDEE,

              Petitioner,

-vs-

SUPERINTENDENT D. NAPOLI,

              Respondent.
_____

**DECISION AND ORDER**
**No. 07-CV-0292T**

## I. Introduction

*Pro se* Petitioner Danny Pardee ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered December 16, 2003, in New York State, County Court, Niagara County, convicting him, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[1], 20.00), and Conspiracy in the First Degree (Penal Law § 105.17).

For the reasons stated below, the writ is denied and the petition is dismissed.

## II. Factual Background and Procedural History

The charges arise out of Petitioner's involvement in the death of sixteen year-old Jennifer Bolander ("Bolander" or "the victim"), whose body was found in the early morning hours of December 14, 2002 on the LaSalle Expressway in the City of Niagara Falls, New York.

The day after the victim's body was found, Petitioner was arrested on an unrelated warrant and taken to the county jail. On December 19, 2002, brothers Chris and Kyle Cummings were arrested on murder charges for the death of Bolander. Both Chris and Kyle Cummings made statements to police which implicated themselves as well as Petitioner in the murder of Bolander.

Petitioner and the Cummings brothers were indicted on March 12, 2003 by a Niagara County grand jury and charged with two counts of murder in the second degree, conspiracy in the second degree, and conspiracy in the first degree.

Prior to trial, discovery took place and <u>Huntley</u> and <u>Cardona</u> hearings were held from June 23, 2003 to July 24, 2003.

Also prior to trial, the Cummings brothers entered pleas to the charges against them with regard to the murder of Bolander. Petitioner proceeded to trial, and the Cummings brothers testified against him. On November 3, 2003, Petitioner was found guilty of murder in the second degree and conspiracy in the first degree. On December 16, 2003, Petitioner was sentenced to a minimum of twenty-five years and a maximum of life.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed. <u>People v. Pardee</u>, 24 A.D.3d 1252 (4th Dept. 2005), <u>lv. denied</u>, 6 N.Y.3d 851 (2006).

No collateral motions were filed.

The instant habeas petition followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of trial counsel; (2) the trial court erred in admitting the statements of his co-conspirators. Petition [Pet.] ¶12A, B (Dkt. #1).

**III. General Principles Applicable to Habeas Review**

**A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant

state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995)."  The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted).  Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277-78 (1992).

**IV. Petitioner's Claims**

**1. Ground One: Ineffective Assistance of Trial Counsel**

In ground one of his habeas petition, Petitioner asserts that he received ineffective assistance of trial counsel because trial counsel failed to move for a change of venue. More specifically, Petitioner argues that he was accused of a "heinous" crime, which received extensive media coverage and aroused the passions of the community, which, in turn, prevented him from receiving a fair trial. Pet. ¶12A. Petitioner raised this claim on direct appeal, and it was rejected on the merits.[1] Pardee, 24 A.D.3d at 1252.

---

[1] The Appellate Division held that, "[a]lthough the crime received extensive media coverage in Niagara County, the jurors who were selected expressed during voir dire their ability to be impartial. No matter how desirable it may be, it is unrealistic to expect and require jurors to be totally ignorant prior to trial of the facts and issues in certain cases. It does not appear herein that defendant could not obtain a fair and impartial trial in Niagara County. Defendant has thus failed to establish that he was denied effective assistance of counsel based on defense counsel's failure to move for a change of venue. Defendant has not shown that the motion, if made, would have been successful and has failed to establish that defense counsel failed to provide meaningful representation." Pardee, 24 A.D.3d at 1252 (internal citations and quotations omitted).

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. The Court finds that Petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

Here, Petitioner contends that he received ineffective assistance of counsel because trial counsel failed to move for a change of venue. To support this contention, Petitioner points to the voir dire proceedings, wherein prospective jurors indicated

that they had either read newspaper articles about the crime, watched TV reports of the crime, or discussed the crime with others. Additionally, he points to several jurors who indicated that they had known the victim's family. See Pet. ¶22A.

"For purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (citing United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029, 87 L. Ed. 2d 636, 105 S. Ct. 3506 (1985)). "Counsel certainly is not required to engage in the filing of futile or frivolous motions." Id. (citing Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam). Here, Petitioner cannot show that counsel's failure to move for a change of venue would not have been futile, given the facts and circumstances of the case.

The record shows that prior to the commencement of the voir dire proceedings, the issue of pre-trial publicity was discussed, in chambers, with both attorneys present. At that time, trial counsel voiced his concerns, and the judge noted, on the record, that she expected that "a lot" of the prospective jurors would be aware of the case through media or through conversations, and, as a result, appropriate measures would need to be taken to ensure impartial jurors were seated. T.T. of 10/06/03, 11-13. Accordingly, counsel conducted a lengthy and extensive voir dire, which included thorough in-chambers questioning of prospective

jurors, over the course of five days. T.T. of 10/06/03-10/10/03. Despite the pre-trial media coverage, each juror that was ultimately selected indicated, on the record, his/her ability to be fair and impartial. Therefore, there was no need for counsel to move for a change of venue. If trial counsel had made such a motion, it would have been denied. See e.g., Solomon v. Commissioner of Correctional Services, 786 F. Supp. 218, 227 (ineffective assistance of counsel claim based on counsel's failure to renew motion for change of venue denied where counsel conducted extensive voir dire, exercised peremptory challenges, voiced his consent to each jury member selected, and decided that change of venue was not necessary). Thus, the Court cannot find that counsel's failure to make what would have been a futile motion under the circumstances was unreasonable. Where there has been no error on the part of trial counsel, the outcome of the proceeding cannot have been affected.

Accordingly, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of settled Supreme Court law. The claim is dismissed.

## 2. Ground Two: The Trial Court Erred in Admitting the Statements of Co-Conspirators

In ground two of the habeas petition, Petitioner argues that the trial court erred in admitting the statements of Petitioner's co-conspirators, Chris and Kyle Cummings. Pet. ¶12B. Although Petitioner raised this claim to the highest state court, he failed

to do so in federal constitutional terms. See Daye 696 F.2d at 191. Consequently, the Court finds the claim unexhausted, but nonetheless procedurally barred because Petitioner no longer has state court remedies available to him to exhaust the claim.

To satisfy the exhaustion requirement, a habeas petitioner must have afforded the state courts a fair opportunity to consider his federal claim. Picard v. Connor, 404 U.S. 270 (1971). In other words, he must present essentially the same factual allegations and legal doctrines to the state court and federal court. Daye, 696 F.2d at 191. The manner in which a state defendant may fairly present the constitutional nature of his claim includes reliance on pertinent federal cases employing constitutional analysis, reliance on state cases employing constitutional analysis in like fact situations, assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and an allegation of a pattern of facts that is well within the mainstream of constitutional litigation. Id. at 194.

In the instant case, Petitioner raised the same factual allegations in state and federal courts. Nonetheless, even under the liberal standard set forth in Daye, Petitioner did not apprise the state court of his constitutional claim. Petitioner's appellate brief relied exclusively on New York cases interpreting New York state law, namely the application of the co-conspirator exception to the hearsay rule. Moreover, the claim advanced by

Petitioner was neither phrased in constitutional terms, nor within the mainstream of constitutional litigation. See Daye, 696 F.2d at 193 (claim that a hearsay statement was improperly admitted would not present a constitutional claim to state court).

Petitioner's claim, although deemed exhausted, is procedurally defaulted because state appellate review is no longer available to him. See Grey 933 F.2d at 120. Petitioner cannot again seek leave to appeal the claim to the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.20. Moreover, collateral review of this claim is also barred because it was raised and determined on the merits on direct appeal to the Appellate Division, Fourth Department. See N.Y. Criminal Procedure Law § 440.10(2)(a) (the court must deny a motion to vacate a judgment when the ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment). Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural bar. Nor has Petitioner demonstrated that this Court's failure to consider the claim would result in a miscarriage of justice. See Wainwright, 433 U.S. at 87-91. Accordingly, habeas relief is not available to Petitioner and the claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the

petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: April 13, 2010
Rochester, New York